IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:14-CV-00077-D

**Chiquita Lemay Pope,**

                Plaintiff,

v.

**Carolyn Colvin**, Acting Commissioner of Social Security,

                Defendant.

**Memorandum & Recommendation**

Plaintiff Chiquita Lemay Pope instituted this action on March 31, 2014 to challenge the denial of her application for social security income. Pope claims that Administrative Law Judge Lisa Hall erred in her determination by not evaluating a prior ALJ decision, by giving great weight to the Functional Capacity Assessment of physical therapist Laura McDaniel and by failing to properly consider her obesity. She further contends that the Appeals Council failed to properly consider the medical questionnaire completed by Dr. Kimberly Johnson. Both Pope and Defendant Carolyn Colvin, the Acting Commissioner of Social Security, have filed motions seeking a judgment on the pleadings in their favor. D.E. 38, 43.

After reviewing the parties' arguments, the court has determined that ALJ Hall reached the appropriate decision. There is substantial evidence to support the Appeals Council's denial of review despite the additional evidence from Dr. Johnson. Additionally, substantial evidence supports ALJ Hall's findings regarding the weight afforded to the prior ALJ decision, to McDaniel's Functional Capacity Assessment and her consideration of Pope's obesity. Therefore

the undersigned magistrate judge recommends[1] that Pope's Motion for Judgment on the Pleadings be denied, that Colvin's Motion for Judgment on the Pleadings be granted, and that the Commissioner's final decision be affirmed.

**I.     Background**

On June 15, 2009, Pope filed an application for disability insurance benefits alleging a disability beginning on February 12, 2009. After her claim was denied at both the initial stage and upon reconsideration, Pope appeared for a hearing. Thereafter, Pope was found not disabled. The Appeals Council remanded the matter to ALJ Hall for further consideration of Pope's residual functional capacity ("RFC"), her mental impairments, and to obtain evidence from a vocational expert ("VE").

During this time, Pope protectively filed subsequent applications for disability benefits and supplemental security income on April 7, 2011, alleging disability beginning on February 12, 2009. After the applications were denied initially and upon reconsideration, Pope appeared for a hearing before ALJ Hall. At the direction of the Appeals Council, ALJ Hall associated the duplicative claim files. Following the hearing, ALJ Hall issued an unfavorable decision dated September 23, 2013. Tr. at 60–72.[2,3]

In her decision, ALJ Hall found that Pope had the following severe impairments: obesity, asthma, bipolar disorder, and degenerative joint disease of the right knee. *Id.* at 63. ALJ Hall also

---

[1] The court has referred this matter to the undersigned for entry of a Memorandum and Recommendation. 28 U.S.C. § 636(b).

[2] A subsequent decision dated May 14, 2011 determined that Pope was disabled as of December 29, 2011.

[3] ALJ Hall issued a decision on the Title II application on September 16, 2013, (tr. at 76–88), and combined the Titles II and XVI decisions on September 23, 2013. Tr. at 60–72.

found that her impairments, alone or in combination, did not meet or equal a Listing impairment. *Id.* ALJ Hall determined that Pope had the RFC to perform light work with the following limitations: can occasionally engage in postural activities; should avoid concentrated exposure to pulmonary irritants and to hazards, such as unprotected heights and moving/dangerous machinery; can perform simple, routine, repetitive tasks; and can occasionally interact with coworkers and supervisors but she cannot maintain sustained interactions with the public. *Id.* at 65. ALJ Hall concluded that Pope was incapable of performing any past work but that, considering her age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that she was capable of performing, such as mail clerk, warehouse checker and office helper. *Id.* at 70–71. Thus, ALJ Hall found that Pope was not disabled. *Id.* at 71. After unsuccessfully seeking review by the Appeals Council, Pope commenced this action and filed a complaint pursuant to 42 U.S.C. § 405(g) on May 5, 2014. D.E. 1-1.

**II.     Analysis**

    **A.     Standard for Review of the Acting Commissioner's Final Decision**

When a social security claimant appeals a final decision of the Commissioner, the district court's review is limited to the determination of whether, based on the entire administrative record, there is substantial evidence to support the Commissioner's findings. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). If the Commissioner's decision is supported by such evidence, it must be affirmed. *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996).

3

B.   **Standard for Evaluating Disability**

In making a disability determination, the ALJ engages in a five-step evaluation process. 20 C.F.R. § 404.1520; *see Johnson v. Barnhart*, 434 F.3d 650 (4th Cir. 2005). The analysis requires the ALJ to consider the following enumerated factors sequentially. At step one, if the claimant is currently engaged in substantial gainful activity, the claim is denied. At step two, the claim is denied if the claimant does not have a severe impairment or combination of impairments significantly limiting him or her from performing basic work activities. At step three, the claimant's impairment is compared to those in the Listing of Impairments. *See* 20 C.F.R. Part 404, Subpart P, App. 1. If the impairment is listed in the Listing of Impairments or if it is equivalent to a listed impairment, disability is conclusively presumed. However, if the claimant's impairment does not meet or equal a listed impairment then, at step four, the claimant's RFC is assessed to determine whether plaintiff can perform his past work despite his impairments. If the claimant cannot perform past relevant work, the analysis moves on to step five: establishing whether the claimant, based on his age, work experience, and RFC can perform other substantial gainful work. The burden of proof is on the claimant for the first four steps of this inquiry, but shifts to the Commissioner at the fifth step. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

C.   **Appeals Council denial of review**

Pope first contends that the Appeals Council erred in discounting a January 14, 2014 questionnaire executed by Dr. Kimberly Johnson. The Commissioner maintains that the additional evidence failed to warrant further consideration or reversal of ALJ Hall's decision. The Appeals Council acknowledged Dr. Johnson's submission and entered it as an exhibit but declined review of ALJ Hall's decision.

4

The Appeals Council must consider evidence submitted by a claimant with the request for review "if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." *Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 953 F.2d 93, 95–96 (4th Cir. 1991); 20 C.F.R. §§ 404.976(b)(1), 416.1476(b)(1) ("The Appeals Council will consider all the evidence in the administrative law judge hearing record as well as any new and material evidence submitted to it which relates to the period on or before the date of the administrative law judge hearing decision."). Evidence is new if it is not duplicative or cumulative. It is material if there is a "reasonable possibility that the new evidence would have changed the outcome of the case." *Wilkins*, 953 F.2d at 96. "[T]he Appeals Council must consider new and material evidence relating to that period prior to the ALJ decision in determining whether to grant review, even though it may ultimately decline review." *Id.* at 95. The Appeals Council does not, however, need to explain its reason for denying review of an ALJ's decision. *Meyer v. Astrue*, 662 F.3d 700, 702 (4th Cir. 2011); *Williams v. Colvin*, No. 5:12-CV-529, 2013 WL 4806965, at *3 (E.D.N.C. Sept. 9, 2013) (noting that the Appeals Council does not need to explain its reason for denying review of an ALJ decision) (citing *Meyer*, 662 F.3d at 702).

Pope submits that Dr. Johnson, her treating psychiatrist, filled out mental residual functional capacity assessment questionnaire that was not available to ALJ Hall but presented for the first time to the Appeals Council. Tr. at 33–38. The questionnaire noted diagnoses of bipolar disorder, not otherwise specified, asthma, and back pain. *Id.* at 33. It further noted that Pope had an inadequate response to medication management. *Id.* Dr. Johnson assigned Pope a current Global Assessment of Functioning ("GAF") score of 45, and remarked that her highest GAF score in the past year was 55. *Id.* Dr. Johnson identified the following signs and symptoms in

5

Pope: mood disturbance, difficulty thinking or concentrating, hallucinations or delusions, hyperactivity, easy distractibility, sleep disturbance, decreased need for sleep, and memory impairment. *Id.* at 34. Dr. Johnson further found Pope's mental abilities to do unskilled work ranged from seriously limited to no useful ability to function. *Id.* at 35. Dr. Johnson opined that Pope would be absent from work four or more days per month, that she had difficulty being around people, and that she had marked memory impairment. *Id.* at 36, 38. She further noted that Pope's condition lasted or could be expected to last at least 12 months. *Id.* at 38.

In considering this additional evidence, the Appeals Council noted that it post-dated June 30, 2013, Pope's date last insured ("DLI"). *Id.* at 29. Although Dr. Johnson's questionnaire is approximately four months after ALJ Hall's decision and six months after Pope's DLI, it states that Pope's condition lasted or could be expected to last at least 12 months. Arguably, therefore, it may relate to the relevant time period. However, such evidence must also be new and material to require consideration by the Appeals Council.

As the Commissioner points out, the record before ALJ Hall noted Pope's history of depression and mental health treatment both prior to her alleged onset date and afterwards. *Id.* at 66–68. She received medication from her primary care physician and reported improvement. *Id.* at 653–54. On October 20, 2009, consultative examiner Dr. Carol Gibbs noted that Pope had mental health problems in the past but was not seeing anyone for these issues at that time. *Id.* at 66. She diagnosed Pope with mood disorder, alcohol abuse, borderline personality disorder and assigned her a GAF of 65. Dr. Gibbs further observed that Pope would be capable of understanding simple, repetitive tasks and instructions but that her ability to deal effectively with people and with work pressure would be moderately to significantly impaired. *Id.* State agency

6

psychologists Drs. Mitchel Rapp and Jonathan Mayhew assessed Pope with mild to moderate limitations and could perform simple, routine, repetitive tasks. *Id.* at 740–57, 852–65.

The evidence before ALJ Hall demonstrates that, in February 2010, Pope was being treated for depression and noted improvement with medication and therapy. *Id.* at 812–14, 874–75. She had no complaints of depression in July 2010 and records note her bipolar disorder was controlled with medication as of August 2010. *Id.* at 941–51, 964–76. The medical evidence of record further shows that Pope was being treated for bipolar disorder in September 2010. At this time, she complained of being moody, angry, socially withdrawn, and having crying spells, but she also stated that she felt more stable with medication. *Id.* at 67. In November 2010 when being treated for a sore throat, Pope specifically denied any depressive symptoms. *Id.* At a psychiatric evaluation performed in May 2012, Pope reported minimal to mild mood and depressive symptoms that were well-controlled with medication. *Id.* at 1860–66. Pope thereafter reported mood swings and reduced sleep in October 2012, for which medication was prescribed. *Id.* Pope reported that medication improved her mood. *Id.*

Considering this evidence with the additional evidence presented to the Appeals Council, Dr. Johnson's questionnaire is neither new nor material. Some of the findings reported by Dr. Johnson are cumulative of those already in the record. For example, Dr. Johnson reiterated Pope's diagnoses, her impaired memory, and her limitation in social interactions. However, other findings in the questionnaire are inconsistent with the evidence demonstrating improvement in Pope's symptoms with medication, as noted above. Further, while Dr. Johnson assessed a GAF score of 45, she also noted that Pope's highest GAF score in the past year was 55, indicative of moderate symptoms or moderate difficulty in functioning. Additionally, Pope's activities of daily living included playing games, driving, shopping and caring for her personal needs. *Id.* at 64, 69.

ALJ Hall also determined that Pope had only mild limitations in this functional area. *Id.* at 64. Given the contrary evidence cited above, there is a not a reasonable possibility that Dr. Johnson's findings would have changed the outcome of the case. *See Williams v. Colvin*, No. 5:12–CV–529–BO, 2013 WL 4806965, at *3 (E.D.N.C. Sept. 9, 2013) (holding the report is not material because the alleged limitations are inconsistent with the other evidence).

Accordingly, because this evidence documents similar diagnoses and treatments as those already considered by ALJ Hall and because Dr. Johnson's questionnaire describes limitations inconsistent with the record, this later-submitted evidence would not have changed ALJ Hall's determination. Therefore, it does not qualify as both new and material. As Pope has failed to demonstrate that Dr. Johnson's January 14, 2014 questionnaire was new and material, the Appeals Council was not required consider it further. Having failed to present a meritorious issue, Pope's request for remand on this issue is unwarranted.

### D. Prior ALJ decision

Pope next argues that ALJ Hall failed to properly consider a prior decision by another ALJ dated April 28, 2009. Specifically, she argues that ALJ Hall stated that she must adopt the findings in the prior decisions. In fact, Pope contends, the findings of a prior decision must only be considered and weighed appropriately. The Commissioner maintains that ALJ Hall appropriately considered the prior ALJ decision but did not adopt its finding that she could perform medium work.

Two cases addressing the consideration of prior agency decisions are *Albright v. Commissioner of Social Security Administration*, 174 F.3d 473 (4th Cir. 1999) and *Lively v. Secretary of Health & Human Services*, 820 F.2d 1391 (4th Cir. 1987). In *Albright*, the claimant sought a period of disability insurance benefits and supplemental security income after sustaining

8

Case 4:14-cv-00077-D   Document 46   Filed 08/10/15   Page 8 of 17

neck and lower back injuries from a work-related automobile accident and a subsequent traffic accident. 174 F.3d at 474. The ALJ denied the claim, finding that "any lingering impairment was 'not severe,'" and that the claimant's testimony regarding the intensity of his pain was not credible. *Id.* Albright did not appeal, but instead filed a new claim for the period following the ALJ's prior decision. *Id.* The second ALJ determined, based on the Fourth Circuit case of *Lively* and its purported codification in Social Security Acquiescence Ruling ("AR") 94–2(4), that he was required to adopt the findings of the sequential evaluation process from the prior claim unless there was new and material evidence relating to that finding. *Id.* at 474–75. Concluding there was no new and material evidence, the ALJ denied the claim and the Appeals Council denied review. *Id.* at 475. On appeal, the court determined that the SSA had interpreted *Lively* too broadly in AR 94–2(4) and remanded Albright's claims for reconsideration. *Id.*

The court of appeals affirmed the district court, holding that the SSA impermissibly merged the claimant's two claims into one in contravention of the agency's "traditional rule that, absent an identity of claims, principles of claim preclusion (historically referred to as res judicata) do not apply." *Id.* at 476. The court went on the explain that "[i]n practice, then, AR 94–2(4) carves out an exception to the general rule that separate claims are to be considered separately." *Id.* In doing so, the *Albright* court distinguished the *Lively* case on which AR 94–2(4) was premised. *Id.* at 477. In *Lively*, the claimant was found to have the RFC to perform light work, and his claim was denied. *Id.* at 475. However, two years later after Lively became 55 years of age, which potentially would have resulted in an award of benefits with an RFC for light work, Lively reapplied for benefits, but the ALJ denied the claim based on the finding that Lively had the RFC to perform medium work. *Id.* The court of appeals determined that the prior finding that Lively was capable of only light work was "highly probative" but "not conclusive"

9

and "had the agency produced substantial evidence of improvement in Lively's condition 'to indicate that [he] was capable of performing medium work,' the prior finding to the contrary need not have been sustained." *Id.* at 477 (quoting *Lively*, 820 F.2d at 1392) (footnote omitted). Thus, the *Albright* court rejected AR 94–2(4) as a restatement of *Lively* and determined Albright's claims were not barred by the ruling in his prior case. *Id.* at 478.

The SSA subsequently issued Acquiescence Ruling 00–1(4), 65 FR 1936–01 (Jan. 12, 2000), which rescinded AR 94–2(4) and interpreted *Albright* to hold as follows:

> [W]here a final decision of SSA after a hearing on a prior disability claim contains a finding required at a step in the sequential evaluation process for determining disability, SSA must consider such finding as evidence and give it appropriate weight in light of all relevant facts and circumstances when adjudicating a subsequent disability claim involving an unadjudicated period.

AR 00–1(4). In determining whether to consider a prior finding as evidence, AR 00-1(4) addresses how adjudicators of subsequent claims should consider findings made in earlier claims and the appropriate weight to be given the earlier findings in light of the facts and relevant circumstances. It directs ALJs to look to:

> (1) whether the fact on which the prior finding was based is subject to change with the passage of time, such as a fact relating to the severity of a claimant's medical condition; (2) the likelihood of such a change, considering the length of time that has elapsed between the period previously adjudicated in the subsequent claim; and (3) the extent that evidence not considered in the final decision on the prior claim provides a basis for making a different finding with respect to the period being adjudicated in the subsequent claim.

*Id.* An ALJ does not necessarily have to walk through each factor in order to comply with AR 00–1(4). Reviewing and evaluating all the evidence presented at the correct standard complies with the acquiescence ruling. *See Melvin v. Astrue*, 602 F. Supp. 2d 694, 702 (E.D.N.C. 2009) ("Although the ALJ did not specifically refer to AR 00–1(4) . . . or explain the precise weight he gave to the [prior ALJ's findings], the ALJ did consider the prior ALJ's findings as part of

10

reviewing the record . . . In doing so, the ALJ complied with AR 00–1(4). The ALJ also complied with *Lively* and *Albright*.").

Thus, *Albright* and AR 00–1(4) merely required ALJ Hall to consider the prior decision. Here, ALJ Hall stated that "adjudicators must adopt disability findings . . . on the prior claim." Tr. at 69–70. She then stated that "the said findings need not be adopted if there is new and material evidence relating to the finding or there has been a change in the law, regulations or rulings affecting the finding[.]" *Id.* at 70. A review of ALJ Hall's decision indicates that she appropriately considered the April 28, 2009 decision in reaching her findings. For instance, ALJ Hall noted that the prior decision found that Pope was capable of a full range of medium work. *Id.* Observing that the current evidence demonstrated that Pope had greater limitations than those assessed in the earlier decision, ALJ Hall afforded the previous decision less weight. *Id.* Clearly, therefore, ALJ Hall did not "adopt" the prior decision. Further, by stating that she considered all the evidence in accordance with *Albright*, *Lively,* and AR 00-1(4), (tr. at 69), ALJ Hall complied with the directives of AR 00-1(4).[4] *See Melvin,* 602 F. Supp. at 702 ; *Grant v. Colvin*, No. 4:12-CV-191, 2014 WL 852080 (E.D. Va. March 4, 2014). As ALJ Hall complied with AR 00-1(4) and properly evaluated the prior decision, the present argument lacks merit.

### E. Functional Capacity Evaluation

Pope's next argument is that ALJ Hall erred when she gave great weight to a Functional Capacity Evaluation ("FCE") completed by physical therapist Laura McDaniel, but did not adopt all the limitations contained therein and failed to explain her reasoning. Pope also takes exception with ALJ Hall's finding that the record consistently demonstrated normal strength and

---

[4] ALJ Hall also referenced the April 28, 2009 decision in her decision as exhibit C1A. Tr. at 70. A review of the Administrative Record, however, fails to disclose that such an exhibit as included as part of the Administrative Record.

11

range of motion ("ROM"). *Id.* at 68. The Commissioner submits that this evidence was considered appropriately.

The FCE found that Pope could perform light work but noted she had some restrictions. Tr. at 1372–79. McDaniel's limitations to avoidance of repetitive bending and twisting would be encompassed by the RFC limitation to only occasional[5] postural activities. *Id.* at 65, 1379. McDaniel also opined that Pope would benefit from vocational rehabilitation with retraining in a less physically demanding field. *Id.* at 1378. McDaniel commented that Pope was "interested in return[ing] to the workforce, however [she] would need to try to work in less physically challenging jobs at this point." *Id.* at 1379.

In giving great weight to an evaluator or provider's assessment, nothing binds an ALJ to accept all of the assessment's conclusions. *See Cook v. Colvin*, No. 2:13-cv-30155, 2015 WL 430880, at *12 (D. Md. Jan. 30, 2015) ("[T]he ALJ may give great weight to an expert's opinion without incorporating every finding, limitation, and assessment contained in the expert's record."); *Laing v. Colvin*, No. SKG–12–2891, 2014 WL 671462, at *10 (D. Md. Feb. 20, 2014) ("Although the ALJ accorded 'great weight' to the state agency psychologists, he was not required to adopt every single opinion set forth in their reports.") (citing *Bruette v. Comm'r Soc. Sec.*, No. SAG–12–1972, 2013 WL 2181192, at *4 (D. Md. May 17, 2013)). While stating that she gave great weight to McDaniel's FCE findings that Pope could perform light exertional work, ALJ Hall did not state that she fully adopted McDaniel's report. Tr. at 69.

---

[5] "Occasionally" is defined as very little, up to one-third of the time S.S.R. 83-10, 1983 WL 31251, at *6.

12

Pope also attempts to fault ALJ Hall for failing to explain her reasoning that the FCE was inconsistent with the RFC. While not specifically discussing the notes from every visit, ALJ Hall properly evaluated the entire record and noted relevant portions. Tr. at 66–70. In reviewing the entire record, ALJ Hall thoroughly discussed the medical and nonmedical evidence, including Pope's medical history, treatments, prescriptions, tests and evaluations. *Id.* As laid out in her decision, ALJ Hall appropriately assigned weight to the medical opinion evidence. *Id.* at 69–70. No more is required. *See Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (explaining there "is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision"); *Piney Mountain Coal Co. v. Mays*, 176 F.3d 753, 762 n. 10 (4th Cir. 1999) (noting the ALJ need not discuss every piece of evidence in making credibility determination); *Anderson v. Bowen*, 868 F.2d 921, 924 (7th Cir. 1989) (noting "a written evaluation of every piece of testimony and submitted evidence is not required"). Further, a review of the decision shows ALJ Hall's reasoning is clear and provides for meaningful judicial review. Thus, ALJ Hall properly considered the evidence in the record, as evidenced by her decision.

Additionally, the evidence set forth in ALJ Hall's decision supports a finding that Pope is capable of performing light work, with limitations. This evidence includes Ms. McDaniel's findings as well as those of Dr. Sankar Kumar, whose findings in a Physical Residual Functional Capacity Assessment were consistent with light work with limitations. *Id.* at 866–73. Thus, substantial evidence supports an RFC finding of light work, with additional restrictions. As to ALJ Hall's statement that Pope consistently showed normal ROM and strength, there is substantial evidence supporting this conclusion as well, as the medical record showed normal ROM and strength on multiple occasions. *Id.* at 618–21, 625–27, 628–34, 648–49, 708–16, 722–27, 767–74, 929–58, 960–63, 1397–1402, 1623–38, 1717–20, 1903. Accordingly, Pope's

argument is unsupported in the record. Therefore, the court recommends granting the Commissioner's motion to dismiss on this issue.

F.  **Evaluation of obesity**

Pope's final argument is that ALJ Hall failed to consider the effects of her obesity. She contends that ALJ Hall erred in stating that although her obesity exacerbated her musculoskeletal problems, it did not cause any secondary conditions. *Id.* at 68. She submits, however, that the evidence demonstrates that her obesity was accompanied by pain, shortness of breath, depression, anxiety, sleep disturbance, obstructive sleep apnea, and reflux. She maintains that ALJ Hall failed to analyze the cumulative effects of all her impairments. She further asserts ALJ Hall erred in noting that she was walking on a regular basis post gastric bypass surgery. *Id.* The Commissioner asserts that this condition was properly considered by ALJ Hall.

If the records show a claimant is obese, the ALJ must consider the obesity in each of the subsequent steps of the analysis. Social Security Ruling ("S.S.R.") 02–lp, 2002 WL 34686281, at *3 (Sept. 12, 2002). An individual's Body Mass Index ("BMI") is an appropriate measure of obesity, and one is considered obese if his or her BMI is 30.0 or greater. *Id*. at *2 ¶ 1. Under S.S.R. 02–lp, obesity alone is an impairment, and obesity can exacerbate the severity of other existing impairments, such as osteoarthritis, hypertension and depression. *Id*. at *1, *3, *5. "The ALJ must assess the entire record to determine the extent to which obesity imposes functional limitations on a claimant, either alone or in combination with other impairments." *Winston v. Astrue*, 4:11–CV–107–D, 2012 WL 40864448, at *3 (E.D.N.C. Sept. 17, 2012); *see also* SSR 02–1p, 2002 WL 3468628, at *4, *6.

Here, the record noted that Pope was 5'7" and weighed 394 pounds, which equates to a BMI of a 61.7. Tr. at 68, 1844. Records from Pope's treatment providers also list her obesity as a

14

condition. *Id.* at 1781, 1932, 1937. ALJ Hall found that while her obesity was a severe condition, it did not meet or equal a listing impairment, either alone or in combination with her other impairments. *Id.* at 63. ALJ Hall further stated that Pope's obesity had been considered at each step of the evaluation in accordance with SSR 02-1p. *Id.* ALJ Hall then determined that Pope was capable of performing a reduced range of light work, which includes postural and environmental limitations, *to wit*, occasional postural activities (such as climbing, balancing, kneeling, crouching, or crawling) and avoiding pulmonary irritants and hazards such as unprotected heights and moving/dangerous machinery. *Id.* at 65. ALJ Hall stated that she had evaluated Pope's obesity pursuant to S.S.R. 02-1p and, further, that she had considered all Pope's symptoms. *Id.* at 63, 65.

Further, Pope has not shown that her obesity adversely affects her functional capabilities to a degree greater than what ALJ Hall determined in her RFC. Despite her obesity and other conditions, ALJ Hall concluded that Pope's impairments were not so limiting as to prevent her from performing light work, with additional restrictions. This finding is supported by the fact that Pope worked for several years with these conditions, right up to her alleged onset date, her broad range of activities of daily living, and Dr. Kumar's report which noted that the objective evidence showed minimal findings and which found that she could perform light work. In sum, there is substantial evidence to support ALJ Hall's findings that Pope's obesity, while a severe impairment, does not preclude all work activity.

Moreover, ALJ Hall's observation that Pope was able to walk on a regular basis is taken directly from the medical record. *Id.* at 1925. Accordingly, it is not a finding made by ALJ Hall but a report by her provider. While Pope points to the medical evidence noting that she presented with several other conditions along with obesity, the decision shows that ALJ Hall acknowledged

15

that such conditions existed, but found that the evidence did not show these other conditions were caused by her obesity.

It is clear, then, that ALJ Hall considered Pope's obesity at steps two, three, and four, finding her past work was medium and thus exceeded her RFC. ALJ Hall also considered this condition at step five when the RFC limitations were incorporated into hypothetical questions to the VE, who then identified work that was compatible with the limitations contained in the RFC. Having failed to demonstrate any error in considering her obesity as required under SSR 02-1p, Pope's argument on this issue lacks merit.

## III. Conclusion

For the forgoing reasons, the court recommends that Pope's Motion for Judgment on the Pleadings be granted, that Colvin's Motion for Judgment on the Pleadings be denied, and that the Commissioner's final decision be affirmed.

Furthermore, the court directs that the Clerk of Court serve a copy of this Memorandum and Recommendation on each of the parties or, if represented, their counsel. Each party shall have until 14 days after service of the Memorandum and Recommendation on the party to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a *de novo* determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation.** *See Wright v. Collins*, **766 F.2d 841, 846-47 (4th Cir. 1985).**

Dated: August 10, 2015.

_____
ROBERT T. NUMBERS, II
UNITED STATES MAGISTRATE JUDGE

17

Case 4:14-cv-00077-D   Document 46   Filed 08/10/15   Page 17 of 17